Stephen Montoya (#011791)
**Montoya, Lucero & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Plaintiff

Mark Brnovich
Attorney General

Michael K. Goodwin (#014446)
Assistant Attorney General
1275 West Washington
Phoenix, Arizona 85007
602-542-7674 (telephone)
602-542-7644 (fax)
Michael.goodwin@azag.gov

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hector Villa,<br><br>Plaintiff,<br><br>vs.<br><br>State of Arizona,<br><br>Defendant. | No.  CV-17-03557-PHX-JAT<br><br>**PROPOSED CASE MANAGEMENT PLAN**<br><br>(Pretrial Scheduling Conference scheduled for December 6, 2017 at 1:30 p.m.) |

Plaintiff Hector Villa ("Plaintiff") and Defendant State of Arizona ("Defendant") hereby submit the following Proposed Joint Case Management Plan pursuant to the Court's Order dated November 2, 2017, Clerk's Docket No. 9.

## 1. THE NATURE OF THE CASE, INCLUDING THE FACTUAL AND LEGAL BASIS OF PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES.

**Plaintiff**:

Mr. Villa was employed as a Correctional Officer II by the Arizona Department of Corrections ("ADOC") at its Lewis Prison Complex in Maricopa County, Arizona.

Mr. Villa's work performance at ADOC was satisfactory to excellent. During the course of his employment with ADOC, Mr. Villa was subjected to severe and pervasive discriminatory harassment by his co-workers and supervisors based on his gender, male, and his national origin, Hispanic.

For example, Mr. Villa's co-workers repeatedly called him a "fag," a "homosexual" and a "culero," a Spanish slang slur for a gay person. In fact, Mr. Villa is a heterosexual male married to a woman and is the father of a young child. Mr. Villa's co-workers also repeatedly told him that they were going to "deport him back to Mexico." In fact, Mr. Villa is a native-born citizen of the United States of America born in Mission Hills, California.

Mr. Villa's co-workers also repeatedly referred to him as an "Italian Nigger," a "faggot," and a "chomo," meaning a child-molester. Another co-worker also repeatedly told Mr. Villa that Mr. Villa was a "homosexual prostitute, a whore and a rapist." Another one of Mr. Villa's co-workers repeatedly told him that he did "not like the Mexican culture" and wanted "to punch [Mr. Villa's] brown face." One of Mr. Villa's supervisors also repeatedly called him a "fag," a "faggot," a "structure fag," and poked Mr. Villa in the butt with a stick and told him that "he [Villa] liked it." Another supervisor told Mr. Villa, "Villa, you Mexican, go cook me some god damned burritos" and "go to work you Mexican." Another supervisor told Mr. Villa, "are you crying that you don't go out on the fire crew?" "You are a paper dropper, I am going to tell [a sergeant] that you are crying like a girl so that you don't go out to any projects with the fire crew." On another occasion, the same supervisor told Mr. Villa, "Villa, you're gay." Another supervisor told Mr. Villa, "Villa is never going to promote, Villa is a dick, a brown dick."

After Mr. Villa repeatedly complained internally of the discriminatory harassment

summarized above, Mr. Villa's co-workers accused him of "ratting" and repeatedly referred to him as a "paper dropper."

Mr. Villa's co-workers and supervisors retaliated against him for opposing discrimination in the workplace at ADOC by (among other things) denying him opportunities to work overtime and receive promotions, denying his requests to transfer to more favorable positions and denying him proper work equipment and adequate work uniforms. Mr. Villa's co-workers and supervisors at ADOC subjected him to the discriminatory harassment summarized above from at least early 2014 until he was ultimately forced to resign his employment with ADOC based on its sustained unlawful conduct on September 21, 2017.

In fact, Defendant has tolerated a discriminatory work environment at the Arizona Department of Corrections for many years now, has routinely failed to investigate complaints of discriminatory harassment in the workplace, has routinely failed to adequately discipline employees guilty of engaging in discriminatory harassment and retaliation, and has condoned retaliation against employees (like Mr. Villa) who oppose discrimination in the workplace at ADOC.

**Defendants**:

Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Id*. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) is not enough. *Id.* A sexually hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Plaintiff worked for ADOC as a Correctional Officer II for ten years, from 2007 to 2017. He alleges that in 2014, one or more of his co-workers verbally harassed him on the basis of sex and national origin by using rude and offensive language. Even if the allegations were all true, alleged harassment was not sufficiently severe or pervasive to

3

create a hostile work environment.

Moreover, where harassment by a co-worker is alleged, an employer may be held liable only if "its own negligence is a cause of the harassment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). "Title VII liability is direct, not derivative: An employer is responsible for its own actions or omissions, not for a co-worker's harassing conduct." *Swenson v. Potter*, 271 F.3d 1184, 1191-92 (9th Cir. 2001). In 2014, Plaintiff filed an internal complaint alleging that he was being harassed by a co-worker. ADOC reassigned the co-worker conducted an investigation. The investigation did not substantiate the allegations. The Department's response was reasonable and appropriate. Plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC found no violation of Title VII.

**2.    JURISDICTIONAL BASIS.**

This Court has subject matter jurisdiction over this action under 28 U.S.C §§ 1331 and 42 U.S.C. § 2000e. This action arises under federal law, Title VII of the Civil Rights Act of 1964. However, the jurisdictional scope of the Plaintiff's court action depends on the scope of the EEOC charge and investigation. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). The specific claims made in the district court ordinarily must be presented to the EEOC. *Id.* (citation omitted). A district court has jurisdiction over discrimination claims that are "like or related to" the allegations made to the EEOC, as well as claims that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations. *Id.* (citation onmitted).

As noted above, Plaintiff filed an EEOC charge alleging discriminatory harassment by a co-worker. (Compl., Ex. A.) The EEOC investigated the allegation and issued a dismissal and notice of right to sue. (*Id.*, Ex. B.) In the Complaint, Plaintiff alleges not only discriminatory harassment but also constructive discharge. (*Id.*, ¶¶ 23, 26.) The constructive discharge claim is not like or related to the allegations in the EEOC charge and is outside the scope of the EEOC investigation. *See Ong v. Cleveland*, 642 F.2d 316, 320 (9th Cir. 1990). Defendant therefore asserts that the Court lacks jurisdiction over

4

Plaintiff's claim of constructive discharge.

**3. PARTIES IF ANY, WHICH HAVE NOT BEEN SERVED, AS WELL AS PARTIES WHICH HAVE NOT FILED AN ANSWER OR OTHER APPEARANCE.**

All parties have been served.

**4. PARTIES NOT SUBJECT TO THE COURT'S JURISDICTION.**

None.

**5. WHETHER THE CASE IS SUITABLE FOR REFERENCE TO A UNITED STATES MAGISTRATE JUDGE OR A SPECIAL MASTER.**

Plaintiff does not believe this case is suitable for reference to arbitration, to a master, or to a United States Magistrate Judge.

**6. STATUS OF RELATED CASES PENDING BEFORE OTHER JUDGES OF THIS COURT OR BEFORE OTHER COURTS.**

There are no related cases pending before other judges of this Court or before other courts.

**7. A DESCRIPTION OF THE PARTIES' DISCUSSIONS OF THE MANDATORY INITIAL DISCOVERY RESPONSES, INCLUDING DISPUTES.**

The parties discussed when the initial discovery responses are due and had no disputes.

**8. IN LIEU OF RULE 26(A) INITIAL DISCLOSURES, THE PARTIES MUST COMPLETE THE MANDATORY INITIAL DISCOVERY RESPONSES REQUIRED BY GEN. ORD. NO. 17-08 (D. ARIZ. APR. 14, 2017) WITHIN THE DEADLINES SET WITHIN THAT ORDER.**

The parties will complete the Mandatory Initial Discovery Responses as required by Gen. Ord. No. 17-08 (D. Ariz. Apr. 14, 2017).

**9. PROPOSED DEADLINES FOR:**

(a) filing motions to amend the pleadings:

*February 2, 2018*

(b) disclosure of expert testimony by plaintiff under Rule 26(a)(2)(C), Fed. R. Civ. P.: *April 6, 2018*

5

MONTOYA, LUCERO & PASTOR
A PROFESSIONAL ASSOCIATION OF LAWYERS
3200 NORTH CENTRAL AVENUE, SUITE 2550
PHOENIX, ARIZONA 85012

        disclosure of expert testimony by defendant under Rule 26(a)(2)(C), Fed. R. Civ. P.:   *May 25, 2018*

   (c)   rebuttal experts, if any:   *June 29, 2018*

   (c)   discovery:   *August 31, 2018*

   (d)   filing dispositive motions: *October 12, 2018*

   (e)   <u>Case specific deadlines</u>:   If either party is presenting their case as a class action, the parties shall include a deadline for <u>motions for class certification</u>; if any defendant anticipates raising the defense of qualified immunity, the parties shall include a date by which all <u>motions for dismissal or summary judgment based on qualified immunity</u> will be filed; if either party believes a <u>Markman</u> hearing will be necessary, the parties shall include a date for holding the <u>Markman</u> hearing.

10. **SUGGESTED CHANGES, IF ANY, IN THE LIMITATIONS ON DISCOVERY IMPOSED BY THE FEDERAL RULES OF CIVIL PROCEDURE.**

The parties anticipate serving written discovery, subpoenaing relevant documents, and taking depositions.

11. **ESTIMATED DATE THE CASE WILL BE READY FOR TRIAL, THE ESTIMATED LENGTH OF TRIAL, AND ANY SUGGESTIONS FOR SHORTENING THE TRIAL.**

Sixty (60) days after the Court's ruling on dispositive motions.  Trial estimated to last 5-6 days.

12. **WHETHER A JURY TRIAL HAS BEEN REQUESTED AND WHETHER THE REQUEST FOR A JURY TRIAL IS CONTESTED.**

Plaintiff requested a jury trial. The request for a jury trial is not contested insofar as Plaintiff seeks legal relief.

13. **THE PROSPECTS FOR SETTLEMENT, INCLUDING ANY REQUEST TO HAVE A SETTLEMENT CONFERENCE BEFORE ANOTHER UNITED STATES DISTRICT COURT JUDGE OR MAGISTRATE JUDGE, OR ANY OTHER REQUEST OF THE COURT FOR ASSISTANCE IN SETTLEMENT EFFORTS.**

The parties will alert the Court if they need assistance in reaching a settlement agreement.

**14. MODIFICATION OF PRETRIAL PROCEDURES DUE TO THE SIMPLICITY OR COMPLEXITY OF THE CASE, AND ANY OTHER MATTERS WHICH COUNSEL BELIEVES WILL AID THE COURT IN RESOLVING THIS DISPUITE IN A JUST, SPEEDY, AND INEXPENSIVE MANNER.**

None.

Respectfully submitted this 22nd day of November 2017.

**MONTOYA, LUCERO & PASTOR, P.A.**

_____
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiff

**MARK BRNOVICH
ATTORNEY GENERAL**

s/ Michael K. Goodwin (with permission)
Michael K. Goodwin
Assistant Attorney General
1275 West Washington
Phoenix, Arizona 85007

I hereby certify that on November 22, 2017, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Michael K. Goodwin
Assistant Attorney General
1275 West Washington
Phoenix, Arizona 85007
Attorney for Defendant

/s/ Stephen Montoya